UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Kimberly Shea, Individually and On Behalf of All Others Similarly Situated, | x ) ) ) No:  23-7488 |
| Plaintiff, | ) ) ) |
| v. | ) CLASS ACTION COMPLAINT ) DEMAND FOR JURY TRIAL |
| Slashop, Inc., | ) ) |
| Defendant. | ) ) ) x |

Plaintiff, Kimberly Shea ("Plaintiff"), by and through her attorney, on behalf of herself and all others similarly situated, for her Complaint states as follows:

## NATURE OF ACTION

1.      This action seeks to remedy the unfair, deceptive, and unlawful business practices of Defendant, Slashop, Inc. ("Defendant" or "Slashop"), with respect to the advertising, marketing and sales of textile products not woven from bamboo fibers . . . yet uniformly described by Defendant as "Bamboo."

2.      Defendant markets, sells, and distributes textile fiber products online, described solely as "Bamboo," such as Comforters; Duvets; Pillowcases; Quilts; Shams; Throws; Towels; Bed blankets; Bed sheet sets; Contour sheets; Duvet covers; Fitted bed sheets; Flat bed sheets; Bath towels; Blanket throws; Hand towels; Loungewear; Nightgowns; Pajamas; Robes; Sleepwear; Socks; Underwear; Pajama bottoms; Pajamas for adults; Pajamas for women; Pajamas for men; Sleep masks; Tee shirts; Ankle socks; Bath robes; Dressing gowns and bath robes (collectively "Products"), using a marketing and advertising campaign that is centered around the claim that the Products are made of either Bamboo or a Bamboo-cotton blend (the "Bamboo Claim(s)").

3.      Textile can be produced from bamboo in one of two ways:

    a.      either by directly weaving the actual fibers of the bamboo plant into fabric, often called "mechanically processed bamboo," or

    b.      by deriving  other materials, such as rayon or viscose, from the bamboo plant source, typically by means of environmentally toxic chemicals in a process that emits hazardous pollutants into the air. The derivative rayon or viscose fibers produced, which contain no trace of the original plant, are then used to weave fabric.

4.     Pursuant to the Federal Trade Commission's guidelines, textiles woven from synthetic materials produced from a bamboo plant source must be identified as "Rayon from Bamboo," "Bamboo Viscose," or a comparable description ( at times "Bamboo Derivative").

5.     Misrepresenting as Bamboo textiles that were actually woven from other materials merely derived from a bamboo plant source is a deceptive practice.

6.     This deceptive practice has been the subject of extensive litigation by, and warnings from, the Federal Trade Commission to the industry . . . warnings which Defendant knows well but has failed to heed.[1]

7.     Defendant has made, and continues to make, deceptive and misleading Bamboo Claims to consumers, in a pervasive, nationwide, marketing scheme that confuses and misleads consumers about the true nature of its products.

8.     Defendant knows that consumers value the benefits of real Bamboo, and advertises the Products with the intention that consumers rely on the online Bamboo Claims and representations.

---

[1] The truth is, most "bamboo" textile products, if not all, really are rayon, which typically is made using environmentally toxic chemicals in a process that emits hazardous pollutants into the air. While different plants, including bamboo, can be used as a source material to create rayon, there's no trace of the original plant in the finished rayon product.

If you make, advertise or sell bamboo-based textiles, the Federal Trade Commission, the nation's consumer protection agency, wants you to know that *unless a product is made directly with bamboo fiber — often called "mechanically processed bamboo" — it can't be called bamboo*.

*See* Exhibit 1: "How to Avoid Bamboozling Your Customers," (FTC 2009) also available at: business.ftc.gov/documents/alt172-how-avoid-bamboozling-your-customers.  (emphasis added)

9.      Through a scheme of integrated deceptions Defendant has worked to convey the singular message: Products are made from natural Bamboo fibers directly woven into fabric.

10.    Defendant's Bamboo Claims are deceptive, misleading and have been designed solely to cause consumers to buy the Products.

11.    As early as August 2009, the FTC issued a Warning Letter to the market, of which Defendant is or should be well aware, that marketing rayon as Bamboo is a *per se* violation of mandated disclosure modalities. Through the years the FTC has frequently published reminders to the market. See Exhibit 2: "False Claims About Bamboo Fabric" (FTC 2021).

12.    Plaintiff and the Class (defined below) were exposed to Defendant's misleading advertising message, which is on Defendant's website, and to which consumers must link in order to make a purchase.

13.    Plaintiff and the Class read and relied upon Defendant's online representations and advertising, namely the Bamboo Claim, when they purchased the Product. Defendant's multitudinous use of "Bamboo Claims" manipulated consumer expectations, i.e. the essence of consumer deception.

14.    Plaintiff and the Class purchased the Products because they wanted the benefits of real Bamboo.

15.    By relying on Defendant's representations that the Products were in fact Bamboo, Plaintiff and the Class have been damaged and suffered an ascertainable loss, discussed *infra.*

16.    Plaintiff and the Class did not receive the benefit of the bargain, *i.e.* the benefits of Bamboo, when they purchased the Bamboo Derivative Products, advertised as being Bamboo.

17.    This class action seeks to provide redress to consumers who have been harmed by the false and misleading marketing practices Defendant has engaged in with respect to the Products. Plaintiff asserts claims, on behalf of herself and the Class for violations of Sections 349-350 of the NY Gen. Bus. Law by

advertising, labeling and selling Products deceptively, pursuant to the Bamboo claims.

18.    Through this action, Plaintiff seeks injunctive relief, statutory damages, attorneys'

fees, costs, and all other relief available to the Class as a result of Defendant's unlawful conduct.

## JURISDICTION AND VENUE

19.    Defendant Slashop, Inc. is a Delaware corporation, formed on September 14,

2021, listing as registered agent for service of process Legalinc Corporate Services, Inc., 651 N.

Broad, Suite 201, Middletown, DE 19709.

20.    Slashop has no business operations in Delaware.

21.    Slashop, Inc. has been and is doing business in New York as an unregistered

company.  See N.Y. Bus. Corp. Law §1301(a)(" A foreign corporation shall not do business in

this state until it has been authorized to do so as provided in this article.")

21.    On information and belief, having reviewed the records of Defendant's trademark filing

with the United States Patent and Trademark Office, one of Defendant's Manhattan business

locations is 10 West End Avenue, Apt 27B, New York, New York10023.

22.    Defendant's founder, owner, and CEO is one Jiaxin Sherelle Li.  Ms. Li is believed

to be a citizen of the People's Republic of China.[2]

---

[2] This action in part seeks to challenge the all-too-familiar scenario whereby largely invisible Chinese ecommerce players take advantage of the American marketplace, substantially without fear of sanction (https://medium.com/swlh/unaccountable-chinese-retailers-threaten-american-consumer-safety-and-business-outdated-laws-are-c75ee4e7d90b):

> E-commerce sellers based in China disproportionately sell illegal knockoffs and unsafe product to American consumers. The American legal system, not equipped for the advances in internet commerce, has given them carte blanche to engage in these activities without repercussions. Sellers based in China now account for 36% of Amazon's US marketplace. Their total sales, at over $100 billion, exceed the GDP of the state of New Mexico. Compared to two years ago, China's share of the top 10,000 sellers on Amazon has risen 26% to 40%. Their numbers are growing, they are taking market share, and it's time America starts paying attention.

23.     On information and belief Ms. Li resides at 72 Baruch Dr.—Apt. 10D, New York, NY 10002-3608.

24.     Ms. Li has posted on LinkedIn seeking Slashop employees to work in Xuhui District, Shanghai, China where, states the post, Slashop has 11-50 employees.  It is believed that the employees in Shanghai are Slashop's core workforce.

25.     On information and belief from knowledgeable sources, Ms. Li is or was a Masters and/or Ph.D. candidate at Columbia University's Business School in New York City in the recent past.

26.     Ms. Li has sought to conceal her identity as Slashop's owner, her location and her contact information.  Ms. Li holds herself out on LinkedIn as a Shanghai-based investment manager (2019-present), holder of several high-level corporate finance positions in New York (2017-2019), prior to which she graduated from Washington University in St. Louis, Missouri (2017).  Ms. Li is highly sophisticated in branding and ecommerce marketing such that to a virtual certainty her wrongdoing as alleged herein was knowing and willful.

27.     Slashop holds itself out publicly to have showroom locations in New York City, commencing 2021, at 11 Bond St. New York, NY 10012, with a 646 area code (https://showfields.com/pages/noho;https://www.callupcontact.com/b/businessprofile/Slashop/812 7215) and, commencing 2023, 187 Kent Avenue, Brooklyn, NY 11249. (https://showfields.com/pages/brooklyn).

28.     Ms. Li *qua* Slashop relies primarily upon social media and ecommerce platforms to achieve the goals of her business plan, substantially all of which social media and ecommerce relationships are managed by Ms. Li from New York City.

29.    Ms. Li has advertised on Google for a second business under the pseudonym ""XMAS MOM," recruiting "commuting aunts" to deploy in New York City, instructing applicants to contact her at the same phone number she has filed with the Delaware Division of Corporations as being her phone number as CEO of Slashop.[3]

30.    Claims asserted herein arise under the laws of the State of New York  because Plaintiff and all class members made the at online purchases from Slashop, whose only relevant business operations in the United States are maintained in New York.  All ecommerce orders matured into contracts in New York, when Slashop issued and transmitted from New York purchase order confirmations to all class members routinely.  " . . . use of a telemarketing site and even the receipt of Internet orders physically within New York State appear to form a New York locus for a transaction covered by the New York State consumer protection statutes.  *Mountz v. Global Vision Prods.*, Inc., 3 Misc. 3d 171, 770 N.Y.S.2d 603, 608 (Sup. Ct. 2003).  *Leider v. Ralfe,* 387 F. Supp. 2d 283, 294 (S.D.N.Y. 2005).

31.    New York has an important interest in maintaining an honest marketplace for the sale of goods and services, particularly as to unregistered businesses such as Slashop that evade the law with each corporate act taken in the state. The New York Court of Appeals has held that § 349 applies to "transactions that take place in New York State" and "does not turn on the residency of the parties." <u>Goshen v. Mutual Life Ins. Co. of New York</u>, 98 N.Y.2d 314, 774 N.E.2d 1190, 1196, 746 N.Y.S.2d 858 (N.Y. 2002).  *In re AMLA Litig.,* 328 F.R.D. 127 (S.D.N.Y. 2018)

32.    All wrongful actions alleged herein were taken in the State of New York (in part or whole)  and, for that reason, Plaintiff may recover on behalf of all persons, in state or out of state, injured by Defendant's marketing. *Cf. People v. H & R Block Tax Serv., Inc.,* 58 A.D.3d 415, 870

---

[3] All citations and references in this Complaint are relied upon, and shall be deemed incorporated, in making the allegations to which they appertain.

N.Y.S.2d 315, 2009 N.Y. App. Div. LEXIS 10, 26 (N.Y. App. Div. 1st Dep't, Jan. 6, 2009).  See also *State of New York v Feldman*, 210 F Supp 2d 294, 303 [SD NY 2002])  "(The statute) was (not) intended to function as a per se bar to out-of-state plaintiffs' claims of deceptive acts leading to transactions within the state."  See  *Cruz v. Fxdirectdealer,* LLC, 720 F.3d 115 (2d Cir. 2013) and numerous progeny, a business with principal or sole headquarters in New York is responsible to out of state purchasers.  E.g. *In re AMLA Litig.*, 328 F.R.D. 127 (S.D.N.Y. 2018).

33.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because the matter in controversy, upon information and belief, exceeds $5,000,000, exclusive of interest and costs, and this is a class action in which certain of the Class members and Defendant are citizens of different states.

28.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because many of the acts and transactions alleged herein occurred in substantial part in this District.  Defendant is subject to personal jurisdiction in New York state because its principal place of business is in New York.  *Sadowski v. Yeshiva World News, LLC*, No. 21-CV-7207 (AMD)(MMH), 2023 U.S. Dist. LEXIS 45562, at *5 (E.D.N.Y. Mar. 16, 2023).


**PARTIES**

29.     Plaintiff is a resident of North Olmstead, Ohio and, thus, is a citizen of Ohio.

30.     Plaintiff purchased the Bamboo Derivative Products on Slashop's proprietary website for personal, family or household use.  As with all Class members, Plaintiff ordered Product from Slashop from her state of residence, and Slashop accepted and confirmed Plaintiff's order from New York.

31.     All of Defendant's actions described in the Complaint are part of, and in furtherance of, the unlawful conduct alleged herein, and were authorized and/or done by Defendant's various officers, agents, employees, or other representatives while actively engaged in the management of Defendant's affairs within the course and scope of his/her/their duties and employment, and/or with the actual, apparent, and/or ostensible authority of the Defendant.

### SLASHOP'S  BUSINESS PRACTICES

32.     Defendant markets and sells the Products  throughout New York and nationwide.

33.     Defendant publishes various advertising claims concerning the fiber content of such Products, stating that fiber content to be Bamboo.  No non-deceptive disclosure of textile content, whether conspicuous or inconspicuous, is afforded the consumer.

34.     "Bamboo" or "Bamboo fiber," connotes to the reasonable consumer a number of qualities, including thin and space-saving, natural and eco-friendly, antibacterial, highly absorbent, mildew resistant, nontoxic, plush and suitable for sensitive skin.

35.     Contrary to representations made by Slashop, Products marketed and sold by Defendant as Bamboo, including those purchased by Plaintiff, are Bamboo Derivative fibers such as rayon, at times called viscose (both referred to as "rayon" hereinafter), not actual Bamboo fibers directly woven into fabric.

36.     Slashop knows its Bamboo Claims to be false and misleading.

### SLASHOP'S WEBSITE: TOOL OF DECEPTION

37.     Slashop uses its website to further its scheme of deception upon unsuspecting consumers.

38.     On its website, Slashop advertises numerous textile products as being made entirely from Bamboo when, in fact, said products are made not from Bamboo but rather are made from Bamboo Derivatives such as rayon.

39.     With respect to the Products that are the subject of this lawsuit, Slashop says nothing of rayon, anywhere:

# Bamboo Pillowcases – Pet Hair Resistant for Dogs/Cats Family

## FABRIC     —

Shell: **100% Bamboo fiber**

40.     With respect to the Products that are the subject of this lawsuit, Slashop makes the Bamboo Claim without disclosing the true composition of the Products.  By advertising the Products as Bamboo without providing disclosure that the products are, in fact, a Bamboo Derivative, Slashop deceptively creates the false impression in the consumer's mind that the Products are Bamboo and possess the superior qualities inherent in Bamboo, but which Bamboo Derivatives such as rayon do not possess.

41.     Slashop's gives no disclosure whatever of its textile's true fiber content.

- 6 -

42.     Slashop does not provide meaningful disclosure that Products contain any fabric aside from bamboo.

43.     Defendant features claims that its "bamboo fabric, "pet hair resistant" and "anti-bacterial."  While real bamboo fiber may be anti-bacterial, Slashop's textile is not anti-bacterial. The claim that the subject textile is resistant to pet hair, fur, dander and the like is misleading because rayon is less pet resistant than numerous other surfaces and no more pet resistant than numerous others.  Rayon is clearly not anti-bacterial and, hence, said representation is deceptive. Unlike real bamboo, rayon is manufactured with environmentally toxic chemicals in a process that emits hazardous pollutants into the air.

44.     At all relevant times Slashop had actual or presumed knowledge that its business practices as alleged herein violated Section 349, NYGBL.

45.     Slashop has applied its deceptive business plan to Eucalyptus along with Bamboo, which is essentially the same deceptive practice with a different source material.  In either case, the textile is synthetic rayon (viscose) and not natural bamboo or eucalyptus.

46.     Plaintiff and each Class member has purchased Bamboo Derivative Products online from Defendant and was exposed to and read Defendant's misleading Bamboo claims.

47.     Plaintiff and each Class member relied upon Defendant's misleading advertising when purchasing Bamboo Derivative Products from Defendant.

48.     Other online retailers do not falsely advertise the composition of Bamboo Derivative products.  In fact, the exact product which Plaintiff purchased from Slashop can be found, often at less cost for a complete set of bedding than Slashop charges for a single sheet

($68).  For example, Amazon features Brielle Home "viscose from bamboo" sheet sets, honestly

advertised, identified as "Material: Rayon" for $56.02[4]

49.    Honest suppliers are careful to fully disclose fiber content in even their Google

search listings, let alone on their product pages:

> Malouf Fine Linens Woven: Bamboo Sheet Set Eastern King
> https://www.sleepworld.com › Bedding › Linen
>
> Includes: (1) Fitted Sheet (1) Flat Sheet (2) Pillowcases Bamboo Sheets will make
> slipping into bed a definite treat. The porous composition of the rayon ...
> Material: Rayon from Bamboo
> Dimensions: Length:76" - Width:80" - Height:22"
> $139.99 · In stock

50.    The manner in which Defendant marketed and advertised the Products is a

complex of deceptive sales practices in violation of Section 349 because, *inter alia,* Slashop (i)

misrepresents Product fiber content as 100% Bamboo, (ii) claims the benefits of Bamboo when

not a single bamboo fiber is found in its Product, and fails to disclose Product is imported and/or

from China.[5]

---

[4] *See* https://www.amazon.com/Brielle-Viscose-Bamboo-Sateen-
Sheet/dp/B07S2GLK5C/ref=sr_1_14?crid=JPCHNST116A1&keywords=viscose%2Bsheet%2B
sets&qid=1673291709&sprefix=viscose%2Bsheet%2Bsets%2Caps%2C115&sr=8-14&th=1
%2CB079QJT53G%2CB07KGHBSPR%2CB074CR6L8W%2CB07RWCM58W%2CB08XC55
RGF%2CB06Y1G2HMV%2CB08XC4M74T%2CB07BLNGN6W%2CB018ZQR2A6%2CB07
6RD4V9X&srpt=BED_LINEN_SET

[5] Federal law requires that most textile and wool products have a label that lists the fiber content,
the country of origin, and the identity of the manufacturer or another business responsible for
marketing or handling the product.  https://www.ftc.gov/news-events/topics/tools-
consumers/apparel-labeling

## PRIOR FEDERAL TRADE COMMISSION PROCEEDINGS
## CONCERNING TEXTILE FIBER PRODUCT MISREPRESENTATIONS

51.    Rayon is the generic name for a type of regenerated or manufactured fiber made from cellulose.  Rayon is manufactured by taking purified cellulose from a plant source (including Bamboo), also called a cellulose precursor, and converting it into a viscous solution by dissolving it in one or more chemicals, such as sodium hydroxide.  The chemical solution is then forced through spinnerets and into an acidic bath where it solidifies into fibers.

52.    Many plant sources may be used as cellulose precursors for rayon fabric, including cotton linters (short cotton fibers), eucalyptus, wood pulp, and Bamboo.  Regardless of the source of the cellulose used, the manufacturing process involves the use of hazardous chemicals, and the resulting fiber is rayon and not cotton, wood, or Bamboo fiber.  *See* 40 C.F.R. Part 63 ("National Emissions Standards for Hazardous Air Pollutants: Cellulose Products Manufacturing").

53.    The Federal Trade Commission has published definitive trade rules, including the following:

> "[w]ords, coined words, symbols or depictions, (a) which constitute or imply the name or designation of a fiber which is not present in the product . . . *[ma*y] *not be used in such a manner as to represent or imply that such fiber is present in the product.*" 16 C.F.R. § 303.18.  Any term used in advertising, including internet advertising, that constitutes or connotes the name or presence of a textile fiber is deemed to be an implication of fiber content, 16 C.F.R. § 303.40; (emphasis added)

54.    In August 2009, the Federal Trade Commission announced three settlements and one administrative action against marketers improperly labeling and advertising rayon textile products as "Bamboo."  In addition to publicly announcing these cases, the Commission issued a Business Alert to remind marketers of the need to label and advertise textile products properly

- 9 -

and to clarify that "Bamboo" is not a proper generic fiber name for manufactured rayon textile fibers. The press release announcing the four cases and the Business Alert were disseminated widely throughout the marketplace. *See* Exhibit 1: "How to Avoid Bamboozling Your Customers," (FTC 2009).

55.    The Commission made clear in connection with its statutory enforcement of the FTC Act as to "Bamboo" that:

a.    both manufacturers and sellers of textile fiber products must comply with the Textile Act and the Textile Rules, *see H. Myerson Sons, et al.,* 78 F.T.C. 464 (1971); *Taylor- Friedsam Co., et al.,* 69 F.T.C. 483 (1966); *Transair, Inc., et al.,* 60 F.T.C. 694 (1962); and

b.    it is an unfair or deceptive act or practice to falsely or deceptively stamp, tag, label, invoice, advertise, or otherwise identify any textile fiber product regarding the name or amount of constituent fibers contained therein, *see Verrazzano Trading Corp., et al.,* 91 F.T.C. 888 (1978); *H. Myerson Sons, et al.,* 78 F.T.C. 464 (1971); *Taylor-Friedsam Co., et al.,* 69 F.T.C. 483 (1966); *Transair, Inc., et al.,* 60 F.T.C. 694 (1962). (emphasis added)

56.    The FTC made clear that the trade practice of advertising "rayon from Bamboo" as "Bamboo" is a deceptive act or practice in violation of Section 5(a)(1) of the FTC Act, 15 U.S.C. § 45(a)(1). In the instant case Slashop not only violates .com advertising and "'green" advertising rules . . . it also violates labeling laws by stating on the material tag that the Product is "Bamboo."

57.    New York Courts have historically followed the FTC pronouncements as to deceptive consumer sales and marketing practices: "[i]ndeed, § 349 was enacted 'to follow in the

steps of the [FTC] with respect to the interpretation of deceptive acts and practices outlawed in Section 5 of the [FTC] Act.' *State by Lefkowitz* v. *Colo. State Christian Coll. of Church of Inner Power, Inc.*, 76 Misc. 2d 50, 346 N.Y.S.2d 482, 487 (N.Y. Sup. Ct. 1973)."

*Braynina v. TJX Cos.,* 2016 U.S. Dist. LEXIS 131562, at *18 (S.D.N.Y. 2016).

58.     Section 349(d), appearing to be a legislative judgment as to lawful disclosure, reads as follows:

> In any such action it shall be a complete defense that the act or practice is, or if in interstate commerce would be, subject to and complies with the rules and regulations of, and the statutes administered by, the federal trade commission or any official department, division, commission or agency of the United States as such rules, regulations or statutes are interpreted by the federal trade commission or such department, division, commission or agency or the federal courts.

59.     Notwithstanding the foregoing notice and warning to the marketplace, Defendant commenced, continued and continues to advertise rayon/viscose textile fiber products as "Bamboo."

60.     Defendant's use of the word "Bamboo" described above is a deceptive practice, as determined by the courts and the FTC, under Section 5(a)(1) of the FTC Act, 15 U.S.C. § 45(a)(1).  See  n.1 *supra*.

## PLAINTIFF'S FACTS

61.     Plaintiff owns three dogs and was drawn to Slashop as a provider of natural bamboo pillowcases resistant to dog hair.

62.     On or about June 14, 2023 Plaintiff accessed Defendant's online site whilst shopping for bedding.

63.     Plaintiff purchased two (2) pillowcases for household use, for which Slashop

promptly provided a purchase order confirmation:

**From:** Slashop.Inc <contact@slashop.com>[SEP]
**Date:** Jun 14, 2023 at 6:35 PM[SEP]
**To:** Okshea5 <okshea5@gmail.com>[SEP]
**Subject: Order #25841896 confirmed**

. . . .

## Order summary

| | | |
|---|---|---|
| [?] | **Bamboo Pillowcases - Pet Hair Resistant for Dogs/Cats Family × 1**<br>Salted caramel / Full/Queen<br>🏷️RADDAD (-$11) | ~~$55~~<br><br>$44 |

| | |
|---|---|
| Subtotal | $44 |
| Shipping | $7 |
| Taxes | $4 |
| Total | **$55 USD** |
| | You saved $11 |

64.     Prior to purchasing the Product at issue, Plaintiff read and relied upon

Defendant's online  presentation stating that its sheets were made of 100% bamboo fiber:



Bamboo Pillowcases – Pet Hair
Resistant for Dogs/Cats Family –
Final Sale

Sale

65.      After receiving her order Plaintiff examined the Product and found a material tag

that confirmed the online representation of as 100%  Bamboo:



66.     After machine washing the pillowslips two times, Plaintiff noticed that the fabric

was breaking down and that dog hair was not easily brushed off the sheets:



67.     Plaintiff caused a fabric analysis to be performed by a leading textile laboratory, which analysis determined that, as alleged herein, there is not a single fiber of bamboo fabric in the pillowslips; rather, the Product is made of viscose rayon.  Exhibit 3.

68.     For the reasons alleged above in "Slashop's Website: Tool of Deception," Slashop (i) marketed to Plaintiff and the Class in bad faith, and (ii) used an obviously fraudulent material tag.

69.     At no point in Slashop's website or on its material tag does Slashop disclose that Product is imported or from China.

## CLASS ACTION ALLEGATIONS

70.     Plaintiff brings this action on behalf of herself and all other persons similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

71.     The Class ("Class")  that Plaintiff seeks to represent, subject to amendment following appropriate discovery, is defined as follows:

> All persons who, in the United States, on or after three years preceding the commencement hereof, purchased online, from any website maintained by Defendant, including but not limited to https://Slashop.com, any textile product advertised on any such website as "Bamboo" ("Class").

72.     Excluded from the Class are (a) Defendant, including any entity in which Defendant has a controlling interest, and its representatives, officers, directors, employees, assigns and successors; (b) any person who has suffered personal injury or is alleged to have suffered personal injury as a result of using the Product; and (c) the Judge to whom this case is assigned.

73.     <u>Numerosity/Impracticability of Joinder</u>:  The members of the Class are so numerous that joinder of all members would be impracticable.  The proposed Class includes, at a minimum, thousands of members.  The precise number of Class members can be ascertained by reviewing documents in Defendant's possession, custody and control.

74.     <u>Commonality and Predominance</u>:  There are common questions of law and fact which predominate over any questions affecting only individual members of the Class.  These common legal and factual questions, include, but are not limited to the following:

      a.     whether Slashop engaged in a pattern of fraudulent, deceptive and misleading conduct targeting the public through the marketing, advertising, promotion and/or sale of the Products;

      b.     whether Slashop's acts and omissions violated Section 349 willfully or knowingly;

      c.     whether Slashop made material misrepresentations of fact or omitted material facts to Plaintiff and the Class regarding the marketing, promotion, advertising and sale of the Products, which material misrepresentations or omissions operated as fraud and deceit upon Plaintiff and the Class;

d.     whether Slashop's false and misleading statements of fact, and concealment of material facts, regarding the Products, were intended to deceive the public;

e.     whether the market value of the goods delivered to Plaintiff and Class members was less than the goods promised to be delivered;

f.     whether Slashop's acts and omissions deceived Plaintiff and the Class;

g.     whether Slashop was required to, but failed to, disclose a country of origin (or the fact of importation) in its advertisements and marketing materials;

h.     whether Slashop misrepresented Product as antibacterial;

i.     whether, as a result of Slashop's misconduct, Plaintiff and the Class are entitled to equitable relief and other relief and, if so, the nature of such relief; and

j.     whether Plaintiff and the members of the Class have sustained ascertainable losses and damages as a result of Slashop's acts and omissions, and the proper measure thereof.

k.     whether each class member is entitled to at least $50 statutory damages under N.Y. Gen. Bus. Law § 349(h).

75.     <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the members of the Class she seeks to represent.  Plaintiff and all Class members have been injured by the same wrongful practices in which Defendant has engaged.  Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class members, and are based on the same legal theories.

76.    <u>Adequacy</u>:  Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained Class counsel who are experienced and qualified in prosecuting class actions.  Neither Plaintiff nor her attorneys have any interests which are contrary to or conflicting with the Class.

77.    <u>Injunction</u>:  Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

**78.**    <u>Management/Superiority</u>:  A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all Class members is economically unfeasible and procedurally impracticable.  While the aggregate damages sustained by the Class are likely in the millions of dollars, the individual damages incurred by each Class member resulting from Defendant's wrongful conduct are too small to warrant the expense of individual suits.  The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every Class member could afford individual litigation, the court systems in New York and throughout the United States  would be unduly burdened by individual litigation of such cases.  Individual members of the Class do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all of the parties and to the court system because of multiple trials of the same factual and legal issues.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.  Plaintiff will not have any difficulty in managing this litigation as a class action.

## COUNT I

### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW
#### (Deceptive Acts and Practices, N.Y. Gen. Bus. Law §§ 349-350 on behalf of the Class)

**79.**     Plaintiff incorporates the allegations set forth above as if fully set forth herein.

**80.**     Slashop's business acts and practices and/or omissions alleged herein constitute deceptive acts or practices under the New York General Business Law, Deceptive Acts and Practices, N.Y. Gen. Bus. Law §§ 349-50 ("NYGBL"), which were enacted to protect the consuming public from those who engage in unconscionable, deceptive or unfair acts or practices in the conduct of any consumer-oriented business, trade or commerce.

**81.**     The practices of Slashop, described throughout this Complaint, were specifically directed at consumers and violate the NYGBL for, *inter alia*, one or more of the following reasons:

a.     Slashop engaged in deceptive, unfair and unconscionable commercial practices in failing to reveal material facts and information about the Product, which did, or tended to, mislead Plaintiff and the Class about facts that could not reasonably be known by them pre-transaction;

b.     Slashop failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner;

c.     Slashop caused Plaintiff and the Class to suffer a probability of confusion and a misunderstanding of legal rights, obligations and/or remedies by and through its conduct;

      d.     Slashop failed to reveal material facts to Plaintiff and Class with the intent that Plaintiff and the Class members rely upon the omission;

      e.     Slashop made material representations and statements of fact to Plaintiff and the Class that resulted in Plaintiff and the Class reasonably believing the represented or suggested state of affairs to be other than what they actually were; and

      f.     Slashop intended that Plaintiff and the other members of the Class rely on its misrepresentations and omissions, so that Plaintiff and other Class members would purchase the Products; and

71.     Under all of the circumstances, Slashop's conduct in employing these unfair and deceptive trade practices was malicious, willful, wanton and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

72.     Slashop's actions impact the public interest because Plaintiff and members of the Class were injured in exactly the same way as thousands of others purchasing the Product as a result of and pursuant to Slashop's generalized course of deception.

73.     By committing the acts alleged in this Complaint, Slashop has misled Plaintiff and the Class into purchasing the Product, in part or in whole, due to an erroneous belief that the Products were Bamboo.  This is a deceptive business practice that violates NYGBL § 349.  The coordinate advertising violates NYGBL § 350.

74.     Slashop's Bamboo Claims misled Plaintiff, and is likely in the future to mislead reasonable consumers acting reasonably under the circumstances. Had Plaintiff and other members of the Class known of the true facts about the Product's fiber content, they would not have purchased the Product . . . and certainly not at the price paid.

75.     The foregoing acts, omissions and practices set forth in connection with Defendants' violations of NYGBL § 349 and § 350 proximately caused Plaintiff and other members of the Class to suffer actual damages in the form of, *inter alia*, monies spent to purchase the Product, and are entitled to recover statutory damages of $50 per violation, together with equitable and declaratory relief, appropriate punitive damages, attorneys' fees and costs of suit.

76.     Plaintiff and the members of the Class are entitled to not less than $50 per transaction by reason of Section 349(h), NYGBL; and Plaintiff in her own right is entitled to injunctive relief per Section 349(h).

WHEREFORE, Plaintiff, on behalf of herself and the Class, prays for judgment against Defendant granting the following relief:

- An order certifying this case as a class action and appointing Plaintiff as Class representative and Plaintiff's counsel to represent the Class;

- All recoverable compensatory and other damages sustained by Plaintiff and the Class, calculated at not less than $50 per transaction provided, however, that the Court increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, upon finding that the defendant willfully or knowingly violated this section.  See *Miller v. Boyanski,* 25 Misc. 3d 1228(A).

- An order (1) requiring Slashop to immediately cease its wrongful conduct as set forth above; (2) enjoining Slashop from continuing to misrepresent and conceal material information and conduct business via the unlawful, unfair and deceptive business acts and practices complained of herein; and (3) ordering Slashop to engage in a corrective advertising campaign.

- Payment of reasonable attorneys' fees and costs; and

- Such other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury as to all triable issues.


Dated:                                         Law Offices of Mark Schlachet


                                               /s/Mark Schlachet_____
                                               Mark Schlachet
                                               305 Broadway, Suite 700
                                               New York, New York
                                               (216) 225-7559
                                               markschlachet@me.com

                                               9511 Collins Ave.-Ste. 605
                                               Surfside, FL 33154


                                               Attorney for Plaintiff Kimberly Shea

EXHIBIT 1

# How to Avoid Bamboozling Your Customers

[PDF]

Marketers looking to provide more environmentally friendly choices to consumers may have heard about bamboo, which has been recognized for its ability to grow quickly with little or no need for pesticides. But when it comes to textile products made from bamboo, that's not the whole story.

The truth is, most "bamboo" textile products, if not all, really are rayon, which typically is made using environmentally toxic chemicals in a process that emits hazardous pollutants into the air. While different plants, including bamboo, can be used as a source material to create rayon, there's no trace of the original plant in the finished rayon product.

If you make, advertise or sell bamboo-based textiles, the Federal Trade Commission, the nation's consumer protection agency, wants you to know that unless a product is made directly with bamboo fiber — often called "mechanically processed bamboo" — it can't be called bamboo. Indeed, to advertise or label a product as "bamboo," you need competent and reliable evidence, such as scientific tests and analyses, to show that it's made of actual bamboo fiber. Relying on other people's claims isn't substantiation. The same standard applies to other claims, like a claim that rayon fibers retain natural antimicrobial properties from the bamboo plant.

If you sell clothing, linens, or other textile products, you're responsible for making truthful disclosures about the fiber content. If your product isn't made directly of bamboo fiber — but is a manufactured fiber for which bamboo was the plant source — it should be labeled and advertised using the proper generic name for the fiber, such as rayon, or "rayon made from bamboo."

Any claims you make about your textile products have to be true and cannot be misleading. As the seller, you must have substantiation for each and every claim — express and implied — that you make.

## For More Information

For more information on advertising and labeling rayon and other textile products, see Threading Your Way Through the Labeling Requirements Under the Textile and Wool Acts. For guidance on making environmental marketing claims, see Complying with the Environmental Marketing Guides. These and other guides for business are at business.ftc.gov.

The FTC works for the consumer to prevent fraudulent, deceptive, and unfair business practices in the marketplace and to provide information to help consumers spot, stop, and avoid them. To file a complaint or to get free information on consumer issues, visit ftc.gov or call toll-free, 1-877-FTC-HELP

(1-877-382-4357); TTY: 1-866-653-4261. The FTC enters consumer complaints into the Consumer Sentinel Network, a secure online database and investigative tool used by hundreds of civil and criminal law enforcement agencies in the U.S. and abroad.

**August 2009**

EXHIBIT 2

https://www.consumer.ftc.gov/articles/bamboo-fabrics

If you're interested in eco-friendly products, you might be curious about bamboo, a tree-like plant that thrives in many locations and grows quickly using little, or no, pesticides. Bamboo is known for its strength and can be used in a variety of eco-friendly products. But when it is processed into fabric that is advertised as "soft," "silky," or "cool to the touch," it has likely been turned into rayon or viscose using toxic chemicals. This process is far from eco-friendly, and the fabric that it creates may not be better for the environment than other types of fabric.

- **False Claims About Bamboo Fabric**
- **Report False Advertising**

## False Claims About Bamboo Fabric

Not all bamboo clothing or bedding is what it seems — or what it's advertised to be. When bamboo has been chemically processed into rayon and similar fabrics, there's no trace of the original plant left. If your goal was to buy something eco-friendly, those toxic chemicals and the rayon fabric they produced are probably not what you had in mind.

Bamboo that has been processed to make soft fabric also no longer has the same qualities as bamboo. For example, although a bamboo plant can resist the growth of bacteria, there's no evidence that rayon fabric made from processed bamboo is "naturally" antibacterial. Real bamboo fabric that may be antibacterial is often rough or scratchy, and is rarely used in fabric you touch, like clothing or bedding.

Companies that claim their eco-friendly products contain bamboo or have antibacterial properties should have reliable scientific evidence to support the claims. To learn more about a product's claims, you can check the product, the company's website, or contact the company. If you aren't satisfied with the information, you may want to choose a different product.

## Report False Advertising

If you think you've been misled about a product, report it to the FTC at ReportFraud.ftc.gov.

May 2021

EXHIBIT 3

Analyst: Leslie Berryhill
Date:  8/22/23
Mi reference number: 23-156
Customer: Law Offices of Mark Schlachet
Attn: Mark Schlachet

**TEXTILE TECHNOLOGY CENTER**
at Gaston College

Introduction:  The lab received a brown woven fabric for fiber identifications.

Results:   The brown woven fabric is 100% viscose rayon in both warp and fill yarns as determined by cross section and microscope ATR infrared analysis.  Cross section for both warp and fill yarns on pages 2 and 3 show crenulated cross section indicative of viscose rayon.  Microscope ATR infrared of the warp and fill yarn are both 98% hits to viscose rayon in the TTC microscope infrared library (page 4).



Brown woven warp yarn cross section



Brown woven fill yarn cross section



Microscope ATR infrared analysis of brown woven fabric yarns